UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>           v.<br><br>AARON'S, INC., JOHN W. ROBINSON, III, and STEVEN A. MICHAELS,<br><br>                        Defendants. | Case No.<br><br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Shiva Stein ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Aaron's, Inc. ("Aaron's" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Aaron's securities between March 2, 2018, and February 19, 2020, both dates inclusive (the "Class Period"), seeking to recover

damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Aaron's was founded in 1955 and is headquartered in Atlanta, Georgia.   The Company operates as an omnichannel provider of lease-purchase solutions to underserved and credit-challenged customers, and also engages in the sale, lease ownership, and specialty retailing of various products.

3.      Aaron's   operates   in   three   reportable   segments—Progressive   Leasing ("Progressive"), Aaron's Business ("AB"), and Vive Financial, LLC ("Vive").  The Progressive and AB segments are subject to federal regulatory agency oversight and scrutiny, including the Federal Trade Commission ("FTC").

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) that Aaron's had inadequate disclosure controls, procedures, and compliance measures; (ii) that, consequently, the operations of Aaron's Progressive and AB segments were in violation of the FTC Act and/or relevant FTC regulations; (iii) that, consequently, Aaron's earnings from those segments were partially derived from unlawful business practices and were thus unsustainable; (iv) the full extent of Aaron's liability regarding the FTC's investigation into its Progressive and AB segments, Aaron's noncompliance with the FTC Act, and the likely negative consequences of all the foregoing on the Company's financial results; and (v) that, as a result, the Company's public statements were materially false and misleading at all relevant times.

2

5.      On July 26, 2018, during after-market hours, Aaron's filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the fiscal quarter ended June 30, 2018.  That Quarterly Report disclosed that, in July 2018, Aaron's received civil investigative demands ("CIDs") from the FTC requesting the production of documents and answers to written questions to determine whether disclosures related to financial products offered by the Company through its AB and Progressive segments were in violation of the FTC Act.

6.      On this news, Aaron's stock price fell $5.38 per share, or 11.01%, to close at $43.47 per share on July 27, 2018.

7.      On April 25, 2019, during pre-market hours, Aaron's filed another Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the fiscal quarter ended March 31, 2019.  That Quarterly Report disclosed that, in April 2019, Aaron's AB segment "received an unrelated CID from the FTC focused on certain transactions involving the purchase and sale of customer lease agreements, and whether such transactions violated the FTC Act."

8.      Then, on February 20, 2020, Aaron's issued a press release announcing the Company's financial results for the quarter and year ended December 31, 2019.  Among other results, Aaron's reported that the Company's Progressive segment had reached an agreement in principle with FTC staff regarding the CID from the FTC that Progressive received in July 2018. Aaron's advised investors that "[u]nder the proposed agreement, which requires final approval by FTC Commissioners and the U.S. District Court for the Northern District of Georgia, Progressive will make a payment of $175 million and enhance certain compliance-related activities, including monitoring, disclosure and reporting requirements."

9.      On this news, Aaron's stock price fell $10.70 per share, or 19.06%, to close at $45.45 per share on February 20, 2020.

10.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Aaron's securities trade on the New York Stock Exchange ("NYSE"), located within this Judicial District.

14.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

15.      Plaintiff, as set forth in the attached Certification, acquired Aaron's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Aaron's is incorporated in Georgia, with principal executive offices located at 400 Galleria Parkway SE, Suite 300, Atlanta, Georgia 30339-3182.  The Company's shares trade on the NYSE under the ticker symbol "AAN".

17.     Defendant John W. Robinson, III ("Robinson") has served as Aaron's Chief Executive Officer ("CEO") at all relevant times.

18.     Defendant Steven A. Michaels ("Michaels") has served as Aaron's Chief Financial Officer ("CFO") and President of Strategic Operations at all relevant times.

19.     Defendants Robinson and Michaels are sometimes referred to herein collectively as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Aaron's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Aaron's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Aaron's, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

21.     Aaron's and the Individual Defendants are sometimes collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Aaron's was founded in 1955 and is headquartered in Atlanta, Georgia.  The Company operates as an omnichannel provider of lease-purchase solutions to underserved and credit-challenged customers, and also engages in the sale, lease ownership, and specialty retailing of various products.

23.     Aaron's operates in three reportable segments—Progressive, AB, and Vive.  The Progressive and AB segments are subject to federal regulatory agency oversight and scrutiny, including the FTC.

24.     Progressive was established in 1999 and acquired by the Company in 2014. Progressive is a purported leader in the expanding virtual lease-to-own market, which partners with traditional and e-commerce retailers in various industries to offer a lease-purchase solution for customers who may not have access to traditional credit-based financing options.

### Materially False and Misleading Statements Issued During the Class Period

25.     The Class Period begins on March 2, 2018.  On March 1, 2018, during after-market hours, Aaron's filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K").  The 2017 10-K reported earnings before income tax expense of $140.22 million on revenues of $1.57 billion for Aaron's Progressive segment, and, for Aaron's AB segment, earnings before income tax expense of $110.64 million on revenues of $1.78 billion.

26.     Additionally, the 2017 10-K touted that "[i]n response to . . . changing market conditions, [Defendants] are executing a strategic plan that focuses on . . . *[c]hampion compliance*," including its "thousands of daily transactions that are extensively regulated and

subject to the requirements of various federal, state, and local laws and regulations," and that Defendants "continue to believe and set expectations that long-term success requires all associates to behave in an ethical manner and to comply with all laws and regulations governing [the] company's behavior" (emphasis in original).

27.     The 2017 10-K also represented that "[a]n evaluation of Aaron's disclosure controls and procedures . . . was carried out by management, with the participation of the [CEO] and [CFO], as of the end of the period covered by [the 2017 10-K]," and that, "[b]ased on management's evaluation, the CEO and CFO concluded that the Company's disclosure controls and procedures were effective as of December 31, 2017 to provide reasonable assurance that the objectives of disclosure controls and procedures are met."

28.     Appended as exhibits to the 2017 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") wherein the Individual Defendants certified that "[t]he [2017 10-K] fully complies with the requirements of Section 13(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78m)" and that "[t]he information contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

29.     The statements referenced in ¶¶ 25-28 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) that Aaron's had inadequate disclosure controls, procedures, and compliance measures; (ii) that, consequently, the operations of Aaron's Progressive and AB segments were in violation of the FTC Act and/or relevant FTC regulations; (iii) that, consequently, Aaron's earnings from those segments were partially derived from unlawful business practices and were thus unsustainable; (iv) the full extent

of Aaron's liability regarding the likely negative consequences of all the foregoing on the Company's financial results; and (v) that, as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

30.     On July 26, 2018, during after-market hours, Aaron's filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the fiscal quarter ended June 30, 2018.  That Quarterly Report disclosed that, in July 2018, Aaron's received CIDs from the FTC requesting the production of documents and answers to written questions to determine whether disclosures related to financial products offered by the Company through its AB and Progressive segments were in violation of the FTC Act.

31.     On this news, Aaron's stock price fell $5.38 per share, or 11.01%, to close at $43.47 per share on July 27, 2018.  Despite the drop in Aaron's share prices following these disclosures, Aaron's securities continued to trade at artificially inflated prices throughout the Class Period as a result of Defendants' continued misstatements or omissions.

32.     For example, in the same Quarterly Report, Aaron's downplayed the full extent of its liability with respect to the FTC's investigation into its Progressive and AB segments, as well as downplayed the extent of Aaron's violations under the FTC Act, stating that Defendants "believe we are in compliance with the FTC Act"; that "these inquiries *could* lead to an enforcement action and/or a consent order, and substantial costs, including legal fees, fines, penalties, and remediation expenses"; and that "[t]he Company is fully cooperating with the FTC in responding to these inquiries" (emphasis added).

33.     On February 14, 2019, Aaron's filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December

31, 2018 (the "2018 10-K").  The 2018 10-K reported earnings before income tax expense of $175.02 million on revenues of approximately $2 billion for Aaron's Progressive segment, and, for Aaron's AB segment, earnings before income tax expense of $84.68 million on revenues of $1.79 billion.

34.    With specific respect to the FTC's investigation into Aaron's Progressive and AB segments, the 2018 10-K downplayed the full extent of Aaron's liability, as well as downplayed the extent of Aaron's violations under the FTC Act.  Specifically, the 2018 10-K represented that Defendants "believe we are in compliance with the FTC Act"; that "[t]he Company is fully cooperating with the FTC in responding to these inquiries and has provided the FTC with the information and documents the FTC has requested"; that "[t]he Company submitted a significant amount of documentation from both [AB] and Progressive . . . in October 2018," from which the FTC only "made requests for a limited number of follow up documents from both businesses"; and that "[a]ll such documents were produced by [AB] in December 2018, and by Progressive . . . in December 2018 and January 2019."

35.    Additionally, the 2018 10-K contained substantively identical representations concerning Aaron's focus on "champion" compliance, the continued adequacy of its disclosure controls and procedures, and the SOX certifications signed by the Individual Defendants as referenced in ¶¶ 26-28 above.

36.    Then, on April 25, 2019, during pre-market hours, Aaron's filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the fiscal quarter ended March 31, 2019.  That Quarterly Report disclosed that, in April 2019, Aaron's AB segment "received an unrelated CID from the FTC focused on certain transactions involving the purchase and sale of customer lease agreements, and whether such transactions violated the FTC

Act." Defendants again downplayed this most recent FTC action, representing that Defendants "believe such transactions were in compliance with the FTC Act"; that "this inquiry **could** lead to an enforcement action and/or a consent order, and substantial costs"; and that "[t]he Company is fully cooperating with the FTC in responding to this inquiry" (emphasis added).

37. The statements referenced in ¶¶ 32-36 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) that Aaron's had inadequate disclosure controls, procedures, and compliance measures; (ii) that, consequently, the operations of Aaron's Progressive and AB segments were in violation of the FTC Act and/or relevant FTC regulations; (iii) that, consequently, Aaron's earnings from those segments were partially derived from unlawful business practices and were thus unsustainable; (iv) the full extent of Aaron's liability regarding the FTC's investigation into its Progressive and AB segments, Aaron's noncompliance with the FTC Act, and the likely negative consequences of all the foregoing on the Company's financial results; and (v) that, as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Fully Emerges

38. On February 20, 2020, Aaron's issued a press release announcing the Company's financial results for the quarter ended December 31, 2019. Among other results, Aaron's reported that the Company's Progressive segment had reached an agreement in principle with FTC staff regarding the CID from the FTC that Progressive received in July 2018. Aaron's advised investors that "[u]nder the proposed agreement, which requires final approval by FTC Commissioners and the U.S. District Court for the Northern District of Georgia, Progressive will make a payment of

$175 million and enhance certain compliance-related activities, including monitoring, disclosure and reporting requirements."

39.    On this news, Aaron's stock price fell $10.70 per share, or 19.06%, to close at $45.45 per share on February 20, 2020.

40.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Aaron's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Aaron's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Aaron's or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Aaron's;

- whether the Individual Defendants caused Aaron's to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Aaron's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

47. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Aaron's securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Aaron's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

50. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Aaron's securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Aaron's securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Aaron's securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Aaron's finances and business prospects.

54.     By virtue of their positions at Aaron's, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

14

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Aaron's, the Individual Defendants had knowledge of the details of Aaron's internal affairs.

56.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Aaron's.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Aaron's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Aaron's securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Aaron's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Aaron's securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57.     During the Class Period, Aaron's securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Aaron's securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Aaron's securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Aaron's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

60.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of Aaron's, and conducted and participated, directly and indirectly, in the conduct of Aaron's business affairs.  Because of their senior positions, they knew the adverse non-public information about Aaron's misstatement of income and expenses and false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Aaron's financial condition and results of operations, and to correct promptly any public statements issued by Aaron's which had become materially false or misleading.

63.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Aaron's disseminated in the marketplace during the Class Period concerning Aaron's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Aaron's to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Aaron's within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Aaron's securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Aaron's.  By reason of their senior management positions and/or being directors of Aaron's, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Aaron's to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Aaron's and possessed the

power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Aaron's.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  February 28, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Gustavo F. Bruckner
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
(212) 661-1100
jalieberman@pomlaw.com

gfbruckner@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, Shiva Stein, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Aaron's, Inc. ("Aaron's" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Aaron's securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Aaron's securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Aaron's securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have sought to serve as a representative party and/or filed a complaint on behalf of a class under the federal securities laws in the following actions:

- *Stein v. Eagle Bancorp, Inc. et al*, 1:19-cv-06873 (S.D.N.Y.)
- *Stein v. Bridgepoint Education, Inc. et al*, 3:19-cv-00460 (S.D. Cal.)
- *Stein v. Callidus Software Inc. et al*, 3:18-cv-01453 (N.D. Cal.)
- *In re Almost Family, Inc. Securities Litigation*, 3:18-cv-00040 (W.D. Ky.)
- *Stein v. Cavium, Inc. et al*, 5:18-cv-00141 (N.D. Cal.)
- *Stein v. Bazaarvoice, et al*, 1:18-cv-00067 (D. Del.)

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

Executed    2/26/20
    **(Date)**

_____
**(Signature)**

S. Stein
**(Type or Print Name)**

**Aaron's, Inc. (AAN)**                                                    **Stein, Shiva**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 2/19/2019 | Purchase | 5 | $53.2750 |